Peck, J.,
delivered the opinion of the court:
James Armstrong, a resident of Charleston, South Carolina, seeks to recover the net proceeds of 54 bales of cotton, which it is alleged and proved were taken from him by the agents of the United States, and converted into money which is now in the treasury of the United States.
In regard to the attachment of this claimant to the federal Union, and his abstinence from favoring the rebellion we have the most satisfactory proof. He was for that vicinity pre-eminently loyal, and did not hesitate to avow, at all times and on all occasions, his ' desire for the success of 'the federal armies.
The national flag was offered for sale at public auction, and he was the only person who had the courage to bid#for it. He nourished and. secreted Union prisoners; he aided in theiri escape; he was not only an out spoken Union man but he performed various deeds of kindness to Union men. Take him all in all, he was a model Union man in the city of Charleston, so pre-eminent in its ‘treason.
We abstract from his deposition the following passages:
“ I can state under oath that I was always loyal to the United States and opposed to the rebellion, and never did anything to aid the rebellion ;• I voluntarily went and furnished the Union prisoners at the jail, racetrack hospital, and the workhouse; I went to Captain G-ayr for a pass for the purpose; he was the confederate provost marshal here; myself and my sons went; and I, in the night, often sent my servants with food, liquor, and other refreshments ; I kept four Union prisoners in my house; Captain Boram of the ship Arcóle, a man named Fitzgerald;. *247 another man, Webb, of Sherman’s army-, and another named Eich; there was also C. D. Duncan, who belonged to the steamer Diotching; I used to take them to my house; they were confined in the building on King street near Line; there were several parties up-stairs; I passed the guard and went up to see them; they remained here several days after the Union army came in; they voluntarily gave me a testimonial of my aid to them; it is signed by them; the paper marked exhibit E by the commissioner is that paper.
“ There was a vessel captured here and they were selling her effects. Among them were three flags, one an English flag, one a confederate flag, and one a United States flag; on starting the auction none would bid on the United States flag; he said they seemed to he unwilling to bid on that dirty rag; I was close by the door and said I would start the flag, and offered #10; there was another man behind who nudged him and he threw down the flag; I hollered to him that was not fair; he said he could not dwell on such a rag as that.”
The testimonial referred to as exhibit E is as follows :
“ CHARLESTON, February 18, 1865.
“We, the undersigned, prisoners of war, recently paroled, take pleasure in hereby certifying to the unremitted kindness and attention shown us by Mr. James Armstrong, of Charleston, South Carolina, during our confinement in that city. He has shown himself to he a true Union man, and incurred not only the displeasure of rebel citizens but a great deal of danger, for his services tendered not only to United States prisoners in Charleston hut in Florence, alleviating the sufferings of our men, and not without pecuniary sacrifice. We would request from the United Spates authorities that whatever property Mr. Armstrong may have may remain unmolested, and in gratitude would esteem it a favor if our authorities would remember his loyalty to our cause and his untiring services to us.
“We are, &c.,
“ Charles D. Duncan,

“Acting Ensign United States Navy.

“A. F. Eich,

“Acting Master’s Mate United States Navy.

“W. H. Fitzgerald,

“Acting Master’s Mate.

“Dwight Webb,

“First Lieut. Co. F, 32d Ohio Vol. Inf., 17th Army Corps.

“Theodore Borbi-iam,

“Formerly Master Ship Arcóle, of New York.”

*248 [Indorsed.]
“ CHARLESTON, June 14.
“ Asks for a passage in tlie Massachusetts; which is approved, whenever the applicant is ready.
“J. T. Dahlgrbn,
. “Rear-Admiral Commanding
It is a satisfaction to. know that one so inflexible, kind, and sincere in his patriotism, can, by the just legislation of the country he so esteemed, receive some compensation for the losses which war inevitably brings.
The registration book of cotton captured at Charleston, in the office of the Quartermaster General, has in it the following entry :
“ James Armstrong. March 25. No. 161. Fifty-four bales cotton on Fordham farm, Wandoo river, six miles from the city.
“ He has a recommendation from Union prisoners for having showed them kind attention in this city and Florence.”
There is no such evidence in the record as satisfies the court that one of the bales of the above number was sea-island cotton.
The special counsel for the defendants has filed a brief in the case, which as to the net proceeds of 20 of the 54 bales claimed, says that these were bought of one P. M. Doucin on the 16th of February, which was but two days before the occupation of Charleston, and that nothing is shown as to the loyalty of Doucin.
Francis A. Michell says in his testimony that claimant reported his cotton to the United States, and that it was at his place on the Wandoo river, some 10 or 15 miles from the city; that claimant brought it to Charleston in a schooner, and the United States took possession of it.
The other testimony in relation to the cotton is that of claimant, who says he purchased the 20 bales of Doucin “about three weeks before the evacuation,” but that he paid for it on the 16th of February. Claimant produces the original bill of the cotton and makes it an exhibit, saying that he had taken the cotton before that date.
The date of the purchase rather than the time of paying for it is what fixes the character of the transaction and indicates its good or bad faith. That the vendor was willing to give possession of the cotton before payment does not show that it was purchased to screen it from capture; and having been purchased, as it was, three weeks before the surrender of Charleston, the presumption does not attach that it was not a proper sale and purchase in the regular order of business. Both facts rest upon the same testimony; it is therefore as good for the time of purchase as for the time of payment.
*249 We are satisfied tliat the cotton was purchased at the time claimant says it was. The cotton was not in the city, and the evacuation at one date or another did not bring these 20 hales within the limits of capture; nothiug was gained or lost-as booty, since the surrender did not place this cotton any more within the control of federal forces than it was without that.
Claimant is entitled to the net proceeds of 54 hales of cotton, which it is shown amount to the sum of $7,088 04, and we so order.